Taylor Wallace BLUE LEGS, Executor of the Estate of Mattie Blue Legs, deceased; and Margaret Jenkins, Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; Lee M. Thomas, Administrator of the Environmental Protection Agency; United States Bureau of Indian Affairs; United States Indian Health Service; and the Oglala Sioux Tribe, Defendants.

No. Civ. 85–5097.

United States District Court, D. South Dakota, W.D.

Feb. 5, 1990.

---

2. See note 1.

Krista H. Clark, Dakota Plains Legal Services, Mission, S.D., for plaintiffs.

Thorton Withers Field, U.S. Dept. of Justice, Land and Natural Resources Div., Gen. Litigation Section, Washington, D.C., for the government defendants.

Marvin Amiotte, Oglala Sioux Tribe, Pine Ridge, S.D., for defendant Oglala Sioux Tribe.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

## NATURE AND PROCEDURAL HISTORY

At the status hearing conducted by this Court on September 28, 1989, the Court heard oral presentations by counsel representing the Bureau of Indian Affairs (BIA), the Indian Health Service (IHS) (the federal defendants), and the Oglala Sioux Tribe (OST). The record of the proceedings reflect the concerns of all parties and the Court. At the conclusion of the status hearing, the Court gave defendants thirty days to submit additional information/proposals. The additional information submitted was "Option 1," termed a supplement to defendants' original plan.

Option 1 and the federal defendants' accompanying "background" statement con-tinue to disregard the clear mandate of the Eighth Circuit Court of Appeals and the admonitions of this Court given to the parties at the status hearing. These submissions only reinforce the Court's abiding conviction that the federal defendants have not as yet faced up to their responsibilities under *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094 (8th Cir. 1989). Such failure reflects bureaucratic indifference at its worst. Those officials charged with the responsibility to discharge their agencies' statutory duties under the acts passed by Congress have taken an oath to fairly uphold the laws of the United States. They shall perform their duties, under sanctions if necessary, but perform they shall. When the federal defendants chose not to appeal *Blue Legs*, it became the settled law of this circuit. The time for equivocation and vacillation is over.

Perhaps a revisit to certain statements in *Blue Legs* is in order. "The Court found that Congress passed the Resource Conservation and Recovery Act of 1976 (RCRA) to remedy national problems caused by hazardous waste and solid waste disposal." *Id.* at 1096. "It thus seems clear that the text and history of the RCRA clearly indicates congressional intent to abrogate the Tribe's sovereign immunity with respect to violations of RCRA." *Id.* at 1097. "BIA and IHS argue that RCRA does not obligate them to participate in compliance efforts. We disagree. We think that they are obligated to participate by the RCRA and the Snyder Act 25 U.S.C. § 13." *Id.* at 1098. "The RCRA obligates the BIA and IHS to insure compliance with Environmental Protection Agency regulations." *Id.* "The district court has the power to order BIA and IHS to undertake whatever compliance efforts are necessary." (citing 42 U.S.C. § 6961). *Id.* at 1099. "The district court found that BIA and IHS were engaged in solid waste management activities in violation of 42 U.S.C. § 6964. We agree." *Id.* "We agree with the district court's conclusion that, under RCRA, BIA and IHS must share the blame and responsibility for the conditions of these sites."

*Id.* at 1099–1100. "The Snyder Act directs the BIA to expend appropriated funds on, among other things, the relief of distress and the conservation of health. Insofar as the Snyder Act imposes affirmative obligations on BIA to relieve distress and conserve Indian Health, BIA's conduct on the Reservation in knowingly contributing to health hazards violated BIA's statutory duty; BIA's duty to remedy the wrong is absolute and is not limited in proportion to their contribution to the problem." *Id.* at 1100. "Our holding that BIA and IHS have a duty to clean up the dumps is buttressed by the existence of the general trust relationship between these agencies and the Tribe." *Id.*

In the face of these clear and unequivocal statements by the Court of Appeals, the federal defendants continue to assert positions reflecting their refusal to accept the law of *Blue Legs*. A listing of their positions illustrates the point.

1. Federal defendants state that "[w]hile we respect the prior rulings of this court and the appellate court, as well as the authority of each, we reiterate our reading that the obligations established by prior proceedings for IHS and BIA fall outside RCRA and the Snyder Act; the absence of funding authority, pointed out herein accords with that view." Docket # 118, p. 3. To take such a position in the face of the appellate decision is preposterous. It partakes of a cavalier, willful, and contumacious disregard of the clear mandate of the appellate decision. Continuing, the federal defendants assert that the reason they do not have to comply is that "clearly the matter of funding is for the Congress." *Id.* at 5.

2. Federal defendants continue to downplay the seriousness of the pollution problems caused by the dumps. They assert that on inspection, "[t]he most significant environmental impact(s) of the dump sites were: visual pollution (windblown and scattered materials); air pollution from uncontrolled burning; and possible exposure due to uncontrolled access to the sites. None of the sites were judged to be currently affecting surface water." Option 1, p. 3.

The correct facts, solidified by the rule of res judicata, are set forth in *Blue Legs*, in part, as follows. "Laboratory analysis of water samples from the [dump] sites showed significant contamination including organisms capable of causing disease in wildlife and frequently humans … urinary tract infections and infections of the respiratory system … neonatal infections, involving the central nervous system and other organisms." *Blue Legs* at 1096.

3. Federal defendants state that "… if ordered by the Court to implement Option 1, the IHS still envisions that its portion of the additional costs would be funded with Fiscal Year 1990 appropriations earmarked to provide water and sewer facilities to individual Indian homes on the Reservation." Docket # 12, p. 2. Again, such position flies in the face of the clear mandate of *Blue Legs* that the federal defendants, together with defendant OST, are responsible for cleaning up the dumps. To state that the clean-up costs will be borne by Indian families who otherwise would be provided water and sewer facilities misses the point entirely. While federal defendants may want to shift their responsibility for complying with RCRA onto the backs of these families, this Court will not permit it.

4. Federal defendants conclude by admonishing the Court that they "respectfully note that they are not in the business of operating and maintaining solid waste disposal facilities." Docket # 12, p. 3. The Court submits that *Blue Legs* put them precisely in that business.

### CONCLUSION

Based upon the nature and procedural history outlined above, the Court draws certain conclusions.

1. The federal defendants intend to disregard the legal rules set forth in *Blue Legs*.

2. The federal defendants fail to recognize their trust responsibility under the Snyder Act.

3. The federal defendants do not accept the authority of the Court to order them to spend money to clean up the dumps.

4. The federal defendants believe that the congressional mandate under RCRA does not apply to governmental agencies.

## ORDER

Based upon the above and foregoing statement of the Court, it is hereby

ORDERED that defendants shall forthwith submit Option 1 to the Administrator of the Environmental Protection Agency (EPA). However, implementation of Option 1, as directed below, shall not be delayed pending the EPA's response to Option 1.

IT IS FURTHER ORDERED that consistent with this Court's memorandum set forth above, the defendants shall proceed to implement Option 1 of the Plan for Solid Waste Management, Pine Ridge Indian Reservation, dated October 1989, with the Court-ordered changes set forth herein.

IT IS FURTHER ORDERED that the initial funding in the amount of $370,323 necessary for the implementation of Option 1 shall be allocated as follows:

50 percent to the BIA

25 percent to the IHS

25 percent to the OST

IT IS FURTHER ORDERED that defendant OST shall exercise management responsibility over the project, including the drafting and implementation of rules for the operation of the respective sites. Upon completion of the initial funding, annual funding thereafter shall be set by the rates set forth in the OST's rules of operation. Such rules shall include, but are not necessarily limited to, the following:

1. schedule of times of operation of the sites and the providing of 24–hour caretaker service;

2. incentives to reimburse tribal residents for the delivery of solid waste to the sites;

3. methodology for the day-to-day operation of the sites.

IT IS FURTHER ORDERED that the federal defendants shall be enjoined from funding the project costs by the use of any money allocated for any existing or future projects on the PRIR. Further, planned or existing projects shall not be delayed or terminated by the federal defendants.

IT IS FURTHER ORDERED that Option 1 shall be completed on or before July 1, 1990, unless further extended by order of this Court.

IT IS FURTHER ORDERED that the BIA, IHS, and OST shall file a written report on the first day of each month commencing March 1, 1990, advising this Court of the progress of the project.

IT IS FURTHER ORDERED that the BIA and IHS shall, effective March 1, 1990, cease all disposal of solid waste within the exterior boundaries of the PRIR. This provision of the Court's order shall remain in effect until the Agency Administrator of each respective agency shall certify, in writing, to this Court that he or she has received a copy of this order, understands its contents, and intends to comply therewith. Thereafter, the deposit of solid waste may continue during the construction phase of Option 1.