**BUSBY SCHOOL OF the NORTHERN CHEYENNE TRIBE, et al.**

v.

**The UNITED STATES.**

No. 221–85L.

United States Claims Court.

July 30, 1985.

---

Michael P. Gross, Santa Fe, N.M., for plaintiffs. Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, N.M., and Charles A. Hobbs, Hobbs, Straus, Dean & Wilder, Washington, D.C., of counsel.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

## OPINION

LYDON, Judge:

Defendant has moved to dismiss plaintiffs' first amended complaint on the ground the court lacks jurisdiction to grant declaratory and injunctive relief, that individual plaintiffs, as third-party beneficiaries under the contracts in question, lack standing to maintain a claim, and that the Contract Disputes Act of 1978 does not apply in this case. Defendant also opposes plaintiffs' motion to certify the suit as a class action on behalf of all members of the Northern Cheyenne Indian Tribe, who are, plaintiffs assert, third-party beneficiaries of certain contracts entered into by and between defendant, acting through the Department of Interior, Bureau of Indian Affairs (BIA) and the Busby School Board. Plaintiffs oppose defendant's motion to dismiss and contest defendant's opposition to class action status.

There are three groups of plaintiffs set forth in the amended complaint in this case. The first group of plaintiffs is the School Board of the Town of Busby which is located on the Northern Cheyenne Indian Reservation in Montana. The School Board is operated by Indian Trustees elected by members of the Northern Cheyenne Tribe. The School Board entered into the contracts with the BIA which provide the basis for this action. The second group of plaintiffs includes named tribal members and their named minor children. This group of plaintiffs is viewed in the complaint as the intended beneficiaries of the School Board contracts with the BIA. The third group of plaintiffs is the second group of plaintiffs who purport to act on behalf of a class of persons similarly situated as to the named tribal members and their named minor children.

Upon consideration of the submissions of the parties, and without oral argument, defendant's motion to dismiss is granted in

part and denied in part as discussed below. Further, plaintiffs' motion to certify this suit as a class action is denied.

## I.

A more detailed statement of the facts in this case can be found in the opinion of this court, rendered on July 25, 1985, denying plaintiffs' motion for a preliminary injunction.

Briefly, implementing the Federal Government's policy of Indian self-determination, Indian communities, like Busby, Montana, were permitted to take over control of their school systems. As a result, the Northern Cheyenne Tribal Council authorized a tribally-elected School Board for the community of Busby on the Northern Cheyenne Tribal Reservation to operate a school system on the reservation. The Council also authorized the School Board to contract with the BIA relative to the operation of such a school system. Such contracts were authorized under 25 U.S.C. § 450f (1982) and implementing regulations, 25 C.F.R. Part 271 (1984).

The first such contract between the School Board and the BIA was entered into in 1972, and successive annual contracts between these parties were entered into thereafter. The 1973–1982 contracts contained the following pertinent provision with respect to school operating facilities:

> Any capital improvements, repairs and maintenance will be the responsibility of the Government (Bureau), unless the contractor [School Board] requests and receives approval for permission to perform some of these functions from funds provided in the contract. [Par. 103 of the contracts].

In 1972, when the first contract was entered into, the high school facility was in a state of disrepair. The high school facility remained in a state of disrepair thereafter up to the present time. This state of disrepair is the focal point of this litigation. Subsequent to 1972, the School Board made continuous requests to the BIA to repair, improve and maintain the high school facility without much success.

In 1982, it became necessary for the School Board to move the high school operation into an elementary school building for the 1982–1983 school year. This combining of school operations, together with construction work being performed on the elementary school facility, created an impossible situation. A 1983 survey of the high school facility by the Department of Health and Human Services (Federal Government) resulted in a recommendation that the high school facility be closed. In March 1983, the State of Montana put Busby high school accreditation on probation based on the poor condition of the high school facility. Given this state of affairs, the School Board, in June 1983, passed a resolution suspending Busby high school academic and extracurricular activities until such time as the high school facilities were upgraded to meet minimum health and safety standards.

Plaintiffs allege that the suspension of high school functions meant, in essence, that all Busby Indian high school-aged children on the Northern Cheyenne Reservation were, and presently are, without means to obtain a high school education since alternative high schools are not reasonably available to them because of distance and road factors.

Effective January 8, 1984, a new annual agreement (No. 5592) for the operation and maintenance of Busby school facilities was entered into by the BIA and the School Board. With respect to the high school facility, this contract provided in pertinent part:

> [T]he BIA Billings Area Office pledges to use its best efforts to secure necessary FI & R [Facilities Improvement and Repair] or any other funds which may be available to provide such repairs so as to permit the reopening of these facilities.

In the fall of 1984, the ninth grade (first year of high school) was able to operate out of the elementary school facility but grades 10–12 were not. At that time the School Board decided it would resume grades 10–12 in the fall of 1985.

The School Board has continued to press the BIA for funds to repair the high school facility and has requested the BIA to re-open the high school for operations. As of the moment, the court understands the BIA has before it for consideration an application by the School Board for a contract for $400,000 to minimally renovate the high school facility so that it can reopen in the fall of 1985. The School Board has also requested that it be permitted to resume high school operations on the reservation in the fall of 1985. There is no indication that final BIA action has been taken on these requests.

In the amended complaint, to which defendant's motion to dismiss is directed, plaintiffs in their jurisdictional statement, rely on 28 U.S.C. § 1491 (1982) (Tucker Act); 28 U.S.C. § 1505 (the so-called Indian Tucker Act); the Contract Disputes Act of 1978, 41 U.S.C. § 609 (the so-called direct access provision) and the due process clause of the Fifth Amendment to the United States Constitution.[1]

▇▇▇ Plaintiffs' complaint, as amended, contains seven (7) counts. Counts I and II set forth breach of contract claims arising out of 1979–1984 contracts between the School Board plaintiff and the BIA.[2] These counts are properly before the court and defendant's broad and undiscriminating motion to dismiss must be dismissed as to these counts. Counts III and VI allege violations and breach of certain statutory and/or regulatory and/or Treaty obligations, the violations and breaches of which give rise to damage claims in favor of plaintiffs. Defendant's broad and all encompassing motion to dismiss does not deal with these counts directly or indirectly. On the basis of the submissions presently before the court, the contractual breaches and statutory and regulatory violations alleged in Counts I through IV are sufficient to meet the muster requirements of 28 U.S.C. § 1491 and/or 28 U.S.C. 1505. The court concludes these counts withstand defendant's motion to dismiss.[3] As to the contract claims, generally, defendant asserts these claims are not covered by the Contract Disputes Act, *supra*. The court is inclined to agree with defendant on this point. It is clear that not all contracts are covered by the Act. *See Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir. 1983). The nature of these Indian contracts, which are not "procurement" oriented contracts, but are basically grant or sociological type contracts designed to accomplish government social policy goals, seem to place them outside the pale of the Act's provisions, 41 U.S.C. § 602. The fact that applicable regulations may follow some procurement type procedures for administrative purposes does not alter this conclusion. The court is of the view that these types of contracts were not meant to be covered by the Contract Disputes Act. *See Newport News Shipbuilding and Dry Dock Co. v. United States*, 7 Cl.Ct. 549, 552–54 (1985).

▇▇▇ Under Count V of the complaint, plaintiffs allege discrimination by the BIA against plaintiffs in favor of other BIA

---

**1.** Plaintiffs also rely on various statutes as providing a jurisdictional basis for their damage claims; *i.e.*, the May 10, 1868 Treaty with the Northern Cheyenne and Northern Arapaho Tribes, 15 Stat. 655; the Snyder Act, 25 U.S.C. § 13 (1982); the Buy Indian Act, 25 U.S.C. § 47 (1982), The Indian Self-Determination and Education Assistance Act of 1975, 25 U.S.C. § 450, *et seq.* (1982); Title XI of the Education Amendments Act of 1978, 20 U.S.C. § 236 *et seq.* and 25 U.S.C. § 2001, *et seq.*; and The Indian Education Amendments of 1984, Title V of Pub.L. No. 98–511, amending Pub.L. 98–561.

**2.** The court assumes, without more, that 28 U.S.C. § 2501 (1982), the 6-year statute of limita-

tions, bars litigation of contracts concluded prior to April 16, 1979.

**3.** While the court has reservations, for example, about the right of the plaintiff School Board to recover consequential damages of $6,500,000, representing, *inter alia*, the lost revenues from the Indian School Equalization Formula provided in 25 C.F.R. Part 39, for alleged violations of statutory obligations by the BIA relative to the operations of the Busby high school facilities, the present posture of the case does not justify precluding plaintiff School Board from remaining in court on said counts at this time. *See, e.g., generally, United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

facilities and seek damages for this violation of the Due Process Clause of the Fifth Amendment which, plaintiffs allege, is in derogation of plaintiffs' rights to equal protection of the laws and due process of law. Defendant does not directly address this count in its broad motion to dismiss the entire complaint. It has been held that denial of Fifth Amendment rights to due process fails to state a claim within the Tucker Act jurisdiction of this court to award money damages. *Meyers v. United States,* 231 Ct.Cl. 965, 966 (1982). *See also Prevado Village Partnership v. United States,* 3 Cl.Ct. 219, 228 (1983) and cases cited therein. As a result, dismissal of this count is proper and appropriate. *See Bellamy v. United States,* 7 Cl.Ct. 720, 723 (1985) and cases cited therein.

■ Under Count VI of the complaint, plaintiffs allege a violation by the Secretary of the Interior of a statutory obligation to bring Indian schools, such as Busby high school, into compliance with all applicable federal, state or tribal health and safety standards. 25 U.S.C. § 2005 (1982). Plaintiffs allege this statutory directive was made a part of all the contracts between the BIA and the School Board. As alleged, this count, falls with the pale of 28 U.S.C. § 1491 and/or 28 U.S.C. § 1505. Accordingly, Count VI withstands defendant's broad motion to dismiss.

■ Under Count VII of the complaint, plaintiffs allege that the failure of the BIA to grant the School Board's request for a contract in the amount of $400,000 to renovate the Busby high school has damaged the School Board in the amount of $400,-000. While Count VII lacks clarity, it appears the School Board seeks damages because a contract was not awarded to it. Such an allegation strains the jurisdictional limitations of this court. Moreover, it would appear that a final agency determination on the School Board's request for a renovation contract has not yet been reached by the BIA and/or the Secretary. Because of uncertainty as to this count and because subsequent events might bear on this count, defendant's broad motion to dismiss, which fails to deal directly with this aspect of Count VII, is denied without prejudice.

■ As an alternative under Count VII, plaintiffs seek declaratory and injunctive relief under 28 U.S.C. § 1491(a)(3) directing defendant to award a renovation contract to the School Board for $400,000 to renovate Busby high school. A federal court generally has no jurisdiction to award contracts. Therefore, plaintiffs cannot get specific performance on a government contract. *Sea-Land Service, Inc. v. Brown,* 600 F.2d 429, 432–33 (3d Cir.1979). *See also Caddell Constr. Co. v. United States,* 7 Cl.Ct. 236, 241 (1985). Further, the court in its opinion of July 25, 1985, denying plaintiffs' motion for a preliminary injunction in this case, detailed the court's lack of jurisdiction to grant plaintiffs declaratory or injunctive relief under 28 U.S.C. § 1491(a)(3). That discussion is equally applicable here. Finally, plaintiffs' complaint is jurisdictionally a Tucker Act action (28 U.S.C. § 1491 and/or 28 U.S.C. § 1505). It is settled that the Tucker Act empowers this court and the district court to award money damages but not to grant injunctive or declaratory relief. *See Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 853, 43 L.Ed.2d 85 (1975); *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Accordingly, those portions of plaintiffs' complaint seeking declaratory and/or injunctive relief, and specific performance by the BIA relating to contract awards are beyond the jurisdiction of the court and defendant's motion to dismiss those portions of the complaint is granted.

Defendant's motion to dismiss is directed specifically at the second group of plaintiffs in this case, *i.e.,* the two named adult families (Jeanne and Alfred Strangeowl and their four minor children and Lucy Littlewhiteman and her minor child) who are alleged in the complaint to be intended third-party beneficiaries of the contracts by and between the BIA and the School Board. Defendant contends the court lacks jurisdiction over these intended third-party beneficiary plaintiffs. In support of its posi-

tion, defendant relies on the principle that subcontractors do not have standing to sue the government under the Tucker Act, citing *Erickson Air Crane Co. v. United States*, 731 F.2d 810 (Fed.Cir.1984). Further, defendant cites *Penn Towne Builders, Inc. v. United States*, 4 Cl.Ct. 677, 682 (1984) wherein this court rejected a claim by a contractor for third-party beneficiary status relative to agreements by and between two other parties.

While the court rejected the contractor's claim in the *Penn Towne* case of entitlement as a third-party beneficiary, it stated in pertinent part that if the contractor "were able to show that it was a specifically intended beneficiary, it might then be able to state a claim of which the court has jurisdiction. *Hebah v. United States*, 192 Ct.Cl. 785, 792, 428 F.2d 1334 (1970) * * *." *Penn Towne Builders, Inc. v. United States, supra,* 4 Cl.Ct. at 682. It is noted that the *Hebah* case involved an individual Indian who was deemed entitled as an intended third-party beneficiary of a Treaty between the Indian Tribe and the United States to prosecute his claim in the Court of Claims. For additional support for the court's position herein see *Orchards v. United States*, 749 F.2d 1571, 1576 (Fed. Cir.1984).

 It is recognized that third-party beneficiary law is plagued by uncertainties, conceptual difficulties and confusion. *See Ables v. United States*, 2 Cl.Ct. 494, 499 (1983), *aff'd without opinion*, 732 F.2d 166 (Fed.Cir.1984). The test generally utilized in this regard is for plaintiffs to show that they were the intended beneficiaries of the contracts in question. *Id.* 2 Cl.Ct. at 500. In the case at bar, the plaintiffs in question may very well be able to show they were intended third-party beneficiaries of the contracts between the School Board and the BIA given the pertinent statutes and regulations and the underlying policy behind the contracts and applicable statutes

and regulations of providing Indian children on Indian reservations with an education. The contracts in issue incorporated therein the substance and intendment of these statutes (*see supra* note 1). It is to be remembered that the contracts in issue required, *inter alia*, that the BIA repair and maintain the high school facility at Busby. The individual plaintiffs and their children seemingly were the intended beneficiaries of these contracts. When the contracts were allegedly breached they suffered the loss of a school facility and attendant ramifications. The court is more persuaded than not, on the basis of the present submissions, that the group of plaintiffs in question were intended to be third-party beneficiaries of the contracts in question. On a motion to dismiss, defendant would have to make a stronger showing than it did to convince the court that it would be justified in denying this group of plaintiffs entitlement to third-party beneficiary status at this time. Accordingly, defendant's motion to dismiss the third-party beneficiary plaintiffs is denied without prejudice.

Finally, plaintiffs, concurrent with the filing of their original complaint, have moved the court for class action status for "all members of the Northern Cheyenne Tribe who are third-party beneficiaries of the contracts" between the BIA and the School Board.[4]

 RUSCC 23 provides only that the "court shall determine in each case whether a class action may be maintained and under what terms and conditions." Case law discloses that class actions in this court, as was the rule in the predecessor Court of Claims, are "generally disfavored" and are reserved only for "extraordinary cases." *Saunooke v. United States*, 8 Cl.Ct. 327, 328 (1985). Contrary to plaintiffs' assertions, the *Saunooke* opinion, which involved the enrolled mem-

---

**4.** In their complaint, as amended, plaintiffs identify the class as "all eligible enrolled Northern Cheyenne tribal members of high school age who have been denied a reasonable opportunity for a high school education" because of defend-

ant's alleged breaches of contract. However, adults, as well as minor children are captioned by plaintiffs as the intended third-party beneficiaries.

bers of the Eastern Band of Cherokee Indians of North Carolina, militates against granting class action status in this case. Class action status was denied in the *Saunooke* case. Further, even if class action status were permitted in this case, plaintiffs' request for an "opt out" class action would be denied. The Court of Claims in *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 141, 453 F.2d 1272, 1276–77 (1972), an Indian claims damage case, recognizing the circumstances of Indians on reservations, refused to adopt an "opt out" class action approach. A similar result was manifested by this court early in its existence. *See Cooke v. United States*, 1 Cl.Cl. 695, 698 (1983). *See also Kominers v. United States*, 3 Cl.Ct. 684, 685–86 (1983). This court, therefore, would reject, in any event, plaintiffs' request for an "opt out" class action.

■ The plaintiffs, and the class they seek to represent, claim damages. Each plaintiff and members of the class they seek to represent would be required to prove specifically entitlement to the damages claimed.[5] This court is unwilling to speculate relative to damage considerations. Accordingly, it is leary about permitting a large number of claimants to seek relief through a class action. *See Saunooke v. United States, supra*, at 329. A better alternative exists whereby numerous litigants possessing similar claims can consolidate their individual actions thereby providing for the necessary individualized damage determinations. Such a procedure would be required in any event. Having it done initially eliminates more problems than would be the case of having it done later as a class. As observed by the court in *Saunooke v. United States, supra*, at

330. "In this court, the results achieved by class action can be easily obtained by individual suits. *See Cooke*, 1 Cl.Ct. at 698." *See also Crone v. United States*, 210 Ct.Cl. 499, 516, 538 F.2d 875, 885 (1976).

There is doubt in the court's mind as to whether, in any event, the named plaintiffs could represent adequately the total interests of the proposed class. Damages for each member of the class would involve a host of circumstances which could vary from family to family and child-student to child-student. Defendant, in its opposition to plaintiffs' class action motion provides some examples of possible factual differences relating to class members which counsels against class action status. For example, the materials suggest some Busby students do attend school. If they are able to attend school why are not others able to do so. Without individual presentation of evidence how can one weed out those who would not attend high school, or would be, or are drop-outs, regardless of the availability of a certified facility. These and other questions indicate the need for individual claims and the potential factual difference and concomitant legal ramifications thereof work against the allowance of class action status.[6] The court is not persuaded that the claims of the purported class would, in all instances, be typical of the claims of the named third-party beneficiaries. *See Crone v. United States, supra*, 210 Ct.Cl. at 515–16, 538 F.2d at 884–85.

■ After careful consideration of the submissions of the parties, the court concludes that class action status would be inappropriate in this case. Accordingly, plaintiffs' motion certifying this action as an "opt out" class action is denied.

---

5. Each of the third-party plaintiffs, and each member of the purported class, seek $100,000 because of defendant's alleged violation of its statutory and contractual obligations to repair and maintain Busby high school. There remains an open question (see *supra* note 3) whether the statutory violations claimed in this case provide a basis for damage awards in this court. *See United States v. Testan, supra*, 424 U.S. at 400–02, 403–04, 407, 96 S.Ct. at 954–55, 955–56, 957.

6. Defendant suggests, with some degree of persuasion, that plaintiffs' description of the class is lacking in specificity and could, if allowed, open the door to large numbers of persons not now envisioned as potential class members. For example, does the proposed class include persons who are no longer of high school age and who did not attend high school of their own volition.

In its First Amended Complaint, plaintiffs stated, as an alternative, that "if the court determines it lacks jurisdiction over all or part of the claims, an order transferring this action to the United States District Court for the District of Montana under 28 U.S.C. § 1631 [be entered]." The court in its opinion dated July 25, 1985, denying plaintiffs' motion for a preliminary injunction, rejected a request by plaintiffs for a section 1631 transfer. The reasons given in that opinion for transfer denial are equally applicable herein. Moreover, the intertwined nature of plaintiffs' allegations in their amended complaint require discernment and judgment as to what portions of the amended complaint would be subject to transfer and which portions are to remain here. In this particular case, the "interest of justice", a key consideration in any section 1631 determination, mandates that the instant transfer request be denied. Plaintiffs can redraft a complaint for District Court filing, if they wish, unimpeded by the intermingling of legal and equitable claims in the amended complaint. As a final observation, the plaintiffs, in their amended complaint have set forth seven (7) counts. In five of these seven counts plaintiffs seek the same relief, i.e., $6,500,000 damages for the School Board and $100,000 for each of the third-party beneficiaries. This suggests that plaintiffs have pleaded their single basic claim a number of ways. Transfer of this case to the District Court for plaintiffs to again plead their single claim another way, with uncertainty existing as to whether the District Court has jurisdiction would not be in the interest of justice. *See* opinion of July 25, 1985, in this case, slip op. at 13, n. 6.

## CONCLUSION

Defendant's motion to dismiss plaintiffs' complaint is granted in part and denied in part as discussed above. Count V of the amended complaint is dismissed. Defendant's motion to dismiss plaintiffs' claims based on jurisdiction under the Contract Disputes Act is granted. Defendant's motion to dismiss the claims of the second group of plaintiffs, the third-party beneficiaries, is denied without prejudice. Defendant's motion to dismiss plaintiffs' claims for declaratory and injunctive relief and their claim for specific contract performance and award is granted. Excepted as indicated above, defendant's motion to dismiss plaintiffs' amended complaint is denied. Plaintiffs' motion for certification of this suit as a class action is denied. Defendant's answer to plaintiffs' First Amended Complaint shall be filed with the court on or before August 29, 1985.