**WHITE MOUNTAIN APACHE TRIBE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–148L.**

United States Court of Federal Claims.

Nov. 19, 1999.

Robert C. Brauchli, Tucson, AZ, for plaintiff.

James M. Upton, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Lois J. Schiffer and Chief, General Litigation Section, William M. Cohen, for defendant. Mary Anne Kenworthy and Carrie Prokop, U.S. Department of Interior, Washington, D.C., of counsel.

## OPINION

FIRESTONE, Judge.

This case comes before the court on defendant's motion to dismiss for failure to state a claim for which relief may be granted and for lack of subject matter jurisdiction. The dispute arises over the federal government's alleged breach of trust to plaintiff, the White Mountain Apache Tribe, with respect to certain property, and improvements thereon, held by defendant in trust for the Tribe. The property and improvements involved, known as "Fort Apache" and the Theodore Roosevelt School, are located on the Fort Apache Indian Reservation in the White Mountains of east-central Arizona. Plaintiff alleges that defendant breached fiduciary obligations owed to plaintiff in failing to maintain, protect, repair and preserve the trust property. Plaintiff seeks damages in the amount of $14,000,000.

Defendant argues that plaintiff fails to state a claim for which relief may be granted, asserting that it owes no trust obligation with respect to the subject property that would give rise to a claim for money damages. Defendant further argues that plaintiff's claim is time barred by the six-year statute of limitations imposed on claims for money damages in this court. After carefully considering the arguments of the parties, the court hereby **GRANTS** defendant's motion to dismiss for failure to state a claim for which relief may be granted.

## FACTS

This controversy involves land and various improvements thereon, known as "Fort Apache," located within the Fort Apache Indian reservation in east-central Arizona. The United States Army established Fort Apache in 1870. During the 1920's, Congress placed the Fort under the control of the Department of the Interior and reserved a portion of the Fort for use as the Theodore Roosevelt Indian Boarding School.[1] The school presently continues to operate for a small number of students.[2] By Act of March 18, 1960, Congress declared the Fort Apache land, together with the improvements thereon, "be held by the United States in trust for the White Mountain Apache Tribe, subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed for that purpose."[3] In November 1965, the Tribe governing council resolved that the area should be placed on the National Historic Register. The National Park Service designated the Fort as a National Historic Site in 1976.

Plaintiff alleges in its complaint that the defendant has allowed the Fort Apache land and improvements to fall into disrepair, and in some cases, buildings have even been demolished, under its use, occupancy, control, supervision, management, and administration. Plaintiff alleges that in 1993, recognizing the extent of the deterioration, it began to take steps to protect the Fort. As part of this effort, plaintiff adopted a master plan for protection, preservation, and restoration of the Fort. Thereafter, in September 1997, the Fort was placed on the World Monument Watch "1998 List of 100 Most Endangered Monuments." The following year, in November 1998, the Tribe commissioned a study of the buildings and obtained cost estimates for their restoration and preservation. Plaintiff further alleges:mat the Department of the Interior ("DOI") and the Bureau of Indian Affairs ("BIA") have failed to perform the necessary maintenance and repairs to the properties.

In the complaint filed in this court on March 19, 1999, plaintiff seeks $14,000,000 in

---

1. "The Secretary of the Interior is authorized to establish and maintain the former Fort Apache military post as an Indian boarding school for the purpose of carrying out treaty obligations, to be known as the Theodore Roosevelt Indian School: Provided, That the Fort Apache military post, and land appurtenant thereto, shall remain in the possession and custody of the Secretary of the Interior so long as they shall be required for Indian school purposes. 25 U.S.C. § 277 (1994)."

2. The future of the school as a viable institution is apparently under review. At argument the plaintiff explained that the Tribe anticipates that the property might be available for their use sometime in the near future.

3. *See* Pub.L. No. 86–392, 74 Stat. 8.

damages for breach of trust, so that the Tribe can repair and restore the trust property. Plaintiff also seeks unspecified compensation for the "economic loss and value of lease/rental fees for the subject trust corpus." On May 19, 1999, defendant moved to dismiss the case for failure to state a claim for which relief may be granted and lack of jurisdiction. In particular, defendant denies that it has any trust responsibility to restore or maintain Fort Apache and the Theodore Roosevelt School in a fashion that could give rise to a money-damages claim. In addition, defendant argues that plaintiff's claim is, in any event, barred by the six-year statute of limitations governing suits filed under 28 U.S.C. §§ 1491 and 1505 because plaintiff knew or should have known of the deteriorated state of the property for more than six years.

The motion has been fully briefed and oral argument was held on November 8, 1999. For the reasons that follow, defendant's motion to dismiss for failure to state a claim under Rule 12(b)(4) is granted.

## DISCUSSION

### 1. Motion to Dismiss

The standard for deciding a motion to dismiss is well settled. In deciding a motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter, or for failure to state a cause of action," the court must construe the allegations of the complaint most favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see Morris v. United States*, 33 Fed.Cl. 733, 741 (1995). In addition, the court must accept as true any undisputed allegations of fact made by plaintiff. *See Haberman v. United States*, 26 Cl.Ct. 1405, 1410 (1992). Ultimately, however, the burden is on plaintiff to establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

### 2. Breach of Trust

Plaintiff bases the court's jurisdiction over this action on the Tucker Act, 28 U.S.C. § 1491(a) (1994) and the Indian Tucker Act, 28 U.S.C. § 1505 (1994). The Tucker Act grants this court jurisdiction over actions "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. Section 1505 confers jurisdiction on this court to hear any tribal claim that "is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe...." 28 U.S.C. § 1505.

■ Neither section 1491 nor section 1505, however, creates a substantive right against the United States for money damages. *See United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). These acts are merely jurisdictional. Where plaintiff has alleged a breach of trust, as in the instant case, the court must first decide the threshold issue of whether the statute or regulations cited by plaintiff create a fiduciary duty on behalf of the defendant, the breach of which would give rise to a claim for money damages. *See United States v. Mitchell*, 463 U.S. 206, 219, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*); *Pawnee v. United States*, 830 F.2d 187, 189 (Fed.Cir. 1987). "That there is such a general fiduciary relationship does not mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of the trust—a claim which must be fully tried in the Claims Court." *Pawnee*, 830 F.2d at 191. Whether plaintiff has alleged sufficient facts to support a breach of trust is secondary to the issue of whether a money-mandating fiduciary relationship exists.

■ The Supreme Court has established the parameters for our inquiry into whether the statutes and regulations that plaintiff relies upon create fiduciary duties in its *Mitchell I* and *Mitchell II* decisions. *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*Mitchell I*); *Mitchell II*, 463 U.S. at 206, 103 S.Ct. 2961. Read together, these two decisions provide that whether a claim for money damages exists depends upon whether the claimant can prove the government has shown an intent to go beyond the limited, or bare trust relationship that exists between the United

States and the Tribes. A claim for money damages requires that the government has expressly or impliedly undertaken to act in a fiduciary capacity toward tribal resources. In order to demonstrate that a fiduciary relationship exists, the claimant must either point to specific statutes or regulations that impose a duty upon the government to manage tribal resources for the benefit of the tribe or demonstrate that the government has actually undertaken to do so. *See Mitchell II,* 463 U.S. at 224–25, 103 S.Ct. 2961.

In *Mitchell I;* the Supreme Court held that statutes and regulations that create only a limited or "bare" trust relationship between the United States and the Tribes do not impose fiduciary obligations, which would give rise to money damages. *See Mitchell I,* 445 U.S. at 545, 100 S.Ct. 1349.[4] At issue in *Mitchell I* was whether the General Allotment Act imposed a duty on behalf of the government to manage the Tribe's timber resources. *See id.* at 542, 100 S.Ct. 1349. The court found that the language and legislative history of the Act indicated that "the [Indian] allottee, and not the United States, was to manage the land." *Id.* at 543, 100 S.Ct. 1349 (citing Indian General Allotment Act, 1, 2, 5, 25 U.S.C. §§ 331, 332, 335). The court further found that Congress directed that the land should be held in "trust" not because it intended to give the government fiduciary obligations, "but simply because it wished to prevent alienation of the land and to ensure that allottees would be immune from state taxation." *Id.* at 544, 100 S.Ct. 1349. Accordingly, the court remanded the case to the Court of Claims to determine if any of the other statutes or regulations cited by plaintiff would provide a basis for imposing a fiduciary duty on the government.

The Supreme Court again had the opportunity to pass on the government's duties with respect to timber resources held in trust by the United States for the Tribe in *Mitchell II,* 463 U.S. at 206, 103 S.Ct. 2961. In *Mitchell II,* the Supreme Court found that the forest management statutes and regulations governing timber resources created a

fiduciary relationship between the government and the tribe and that breach of that trust would give rise to a money claim. *See id.* at 224, 103 S.Ct. 2961. The statutes and regulations at issue in *Mitchell II,* gave the Secretary of Interior "comprehensive control" over management of timber resources. *See id.* at 209, 219, 222, 225, 103 S.Ct. 2961. Under the forest management statute, the Secretary of Interior is required to conduct timber sales "based upon a consideration of the needs and best interests of the Indian owner," and use the proceeds from such sales to benefit the Indians. *Id.* at 209, 103 S.Ct. 2961 (citing 25 U.S.C..§§ 405–407). The regulations further direct the government to manage "the Indian forests so as to obtain the greatest revenue for the Indians consistent with a proper protection and improvement of the forests." *Id.* at 224, 103 S.Ct. 2961 (quoting Office of Indian Affairs, Regulations and Instructions for Officers in Charge of Forests on Indian Reservations 4 (1911)). The court found that this language made the government a trustee with respect to the Tribe's timber resources. In addition, the court found that "where the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties...." *Id.* at 225, 103 S.Ct. 2961. The court concluded that breach of this fiduciary relationship gave rise to a claim for money damages, which was within the jurisdiction of the Court of Claims. *See id.* at 228, 103 S.Ct. 2961.

The courts have applied this dichotomy between a limited, or bare trust and a fiduciary relationship, that was laid out in the *Mitchell I* and *Mitchell II* decisions, to determine whether a trust relationship exists with respect to other resources. Applying the *Mitchell II* rationale, the Federal Circuit found that statutes and regulations governing oil and gas leases created a fiduciary relationship in *Pawnee v. United States,* 830 F.2d at 190. The court found that the Indian Long-term Leasing Act, 25 U.S.C. § 396, and

---

**4.** . See also *Eastern Band of Cherokee Indians v. United States,* 16 Cl.Ct. 75, 78 (1988) ("If the source of substantive law establishes only a general trust relationship, the government's fiducia- ry obligations are not those of a private trustee.") (citing *Montana Bank v. United States,* 7 Cl.Ct. 601, 613 (1985)).

the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701–1757, place the government in the role of trustee with respect to oil and gas resources because these statutes:

> (a) give elaborate powers to Interior with respect to those leases, (b) always call for consideration of the best interests of the Indians, (c) require proceeds of the leases to be given to the Indians and, (d) recognize the existence of a general trust relationship toward the Indians with respect to the oil and gas products of these lands.

*Id.; see also Brown v. United States*, 86 F.3d 1554, 1560 (Fed.Cir.1996). Based on these factors, the court concluded the mineral leasing acts created fiduciary obligations with respect to mineral leasing similar to the obligations the court found in *Mitchell II* with respect to timber resources. *See Pawnee*, 830 F.2d at 190.[5]

Alternatively, where the claimant cannot demonstrate that the government has "assume[d] the duty of preserving the principal, generating income, and disbursing profits," with respect to the alleged trust property, the courts have not found a fiduciary relationship which would support a claim for money damages. *See, e.g., Grey v. United States*, 21 Cl.Ct. 285, 293 (1990), *aff'd*, 935 F.2d 281 (Fed.Cir.1991), *reh'g denied*, (1991). In *Grey*, the court refused to find a breach of trust where plaintiff could not point to a statute or regulation that created a duty on behalf of the government that would require the government to manage water delivery to and irrigation of individual farm allotments. *See id.*

Similarly, in *White Mountain Apache v. United States*, 11 Cl.Ct. 614 (1987), a case brought by these same plaintiffs, the court held that the Tribe had not established a trust relationship to protect range lands. In *White Mountain Apache*, the court found that the government had a fiduciary obligation not to overgraze the Indian's land

because the government had "undertaken to administer" a program of leasing grazing lands to non-indian livestock owners. *Id.* at 650. Nonetheless, the court also found with respect to protecting the Tribe's land in general that a fiduciary duty giving rise to damages did not exist. *See id.* The court held that "[fiduciary] liability cannot attach for the Government's failure to provide funds for fencing the range to protect the reservation itself from trespass or to protect the range within the reservation grazed by Indian cattle from encroachment by permittee cattle." *Id.*

Tested by these standards and precedents, the court in the present case must determine whether under the statutes and regulations identified by plaintiff the defendant owes plaintiff any specific responsibilities with respect to the Fort Apache buildings and improvements that give rise to a money claim for breach of trust.

### 3. The 1960 Act and Other Statutes

Plaintiff contends that the 1960 Act, the Snyder Act, 25 U.S.C. §§ 2, 13, and various other statutes and regulations impose fiduciary obligations on the government to maintain, protect, repair, and preserve Fort Apache for the benefit of plaintiff. These include: 25 U.S.C. § 277; Title XI of the Education Amendments Act of 1978, 25 U.S.C. § 2005 (1994); Improving America's Schools Act of 1994, 25 C.F.R. Pt. 32.3, 32.4(s)(2); Non–Alienation of Tribal Trust Property, 25 U.S.C. § 177 (1994), 25 C.F.R. § 162.1; and American Indian Trust Fund Management Act, 25 U.S.C. § 4043(c)(5)(C) (1994 & Supp. III 1997). Plaintiff argues that the express trust created by the 1960 Act, in combination with the Snyder Act, and other statutes and regulations, gives the government exclusive control over the Fort Apache site, thereby creating a fiduciary relationship under the standards set forth in *Mitchell II*. Defendant asserts that the gov-

---

**5.** The court cited various provisions of the acts and their legislative history to support its conclusion. 25 U.S.C. § 396 authorizes the Secretary of Interior to lease Indian lands "for any term of years as may be deemed advisable by the Secretary of the Interior," and "to perform any and all acts ... necessary for carrying out the provisions of this section in full force and effect." 30 U.S.C. § 1701(b)(4) states that among the purposes of the act is "to fulfill the trust responsibility of the United States for the administration of Indian oil and gas resources." Further, 30 U.S.C. §§ 1714 and 1715 provide for royalty payments to Indians.

ernment's control over the Fort Apache site, absent any mandate to generate income from the property, is insufficient to create a fiduciary duty to maintain or restore the buildings and improvements at the site, the breach of which would give rise to a money claim. The court agrees with defendant's contentions.

■ The fundamental flaw in plaintiff's action is that it fails to meet the *Mitchell II* test. Contrary to the plaintiff's contentions, the court views the 1960 Act as similar to the provisions of the General Allotment Act which was found insufficient to establish a money,mandating claim in *Mitchell I,* 445 U.S. at 535, 100 S.Ct. 1349, *Grey,* 21 Cl.Ct. at 285, and *White Mountain Apache,* 11 Cl.Ct. at 614. The 1960 Act merely states that Fort Apache shall be held by the government in trust for the White Mountain Apache Tribe, "subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed...." Pub.L. No. 86–392, 74 Stat. 8. This language creates a limited, or bare trust relationship between the government and the Tribe. In contrast to the timber management statutes and regulations found to create fiduciary duties in *Mitchell II,* the 1960 Act does not direct the government to manage the Fort Apache site for the benefit of the Tribe. To the contrary, the 1960 Act states that the Secretary. of the Interior may use the land and improvements "for administrative or school purposes *for as long as they are needed." Id.* (emphasis added). As the plain language indicates, the Act reserves the Fort Apache site for the federal, government's benefit and not for the benefit of the Tribe.[6]

■ With respect to the Snyder Act, 25 U.S.C. §§ 2 and 13, the court agrees with others of this court who have held that these provisions fail to provide a basis for a money-mandating claim as laid out in *Mitchell II.* In *Allred v. United States,* 33 Fed.Cl. 349 (1995), the court held that the Snyder Act was not a money-mandating statute for jurisdictional purposes. Relying on the Supreme Court's opinion in *Lincoln v. Vigil,* 508 U.S. 182, 194, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993), which held that the "general terms" of the Snyder Act do not mandate that the Indian Health Service spend its general appropriations on specific programs aimed at a particular class of individuals, the court found that, likewise, the "[Snyder] Act does not mandate compensation for claims by individuals." *Allred,* 33 Fed.Cl. at 354 (citing *Lincoln,* 508 U.S. at 194, 113 S.Ct. 2024); *See also Vigil v. Andrus,* 667 F.2d 931 (10th Cir.1982) (holding that Snyder Act is "too broad" to support a conclusion that Congress intended to impose a duty on the government to provide funds for lunches for all Indian school children).

■ The court also finds that none of the additional statutes or regulations plaintiff cites create the type of fiduciary duty which would mandate money damages to be paid by the federal government. Title XI of the Education Amendments Act of 1978, 25 U.S.C. § 2005, and the Improving America's Schools Act of 1994, 25 C.F.R. Pt. 32.3, 32.4(s)(2), mandate that the Secretary of Interior shall keep all Indian Schools in compliance with applicable health and safety standards.[7] The American Indian Trust Fund Management Act, 25 U.S.C. § 4043, requires the DOI to certify that budget requests made to Congress are adequate to meet the DOI's

---

**6.** Plaintiff also cites 25 U.S.C. § 277 as authority for its proposition that the government is a fiduciary with respect to Fort Apache. Section 277, which preceded the 1960 Act, granted possession of Fort Apache to the Secretary of Interior, authorizing the Secretary to establish the Theodore Roosevelt School. Section 277 did not direct the Secretary to manage Fort Apache or the School to generate income for the Tribe. Moreover, Section 277 vested possession of the Fort in the Secretary, not in the Tribe. Thus, Section 277 fails to establish even a limited trust relationship like that found in *Mitchell I.*

**7.** Plaintiff cites *Busby School v. United States,* 8 Cl.Ct. 596 (1985), to support its claim that 25 U.S.C. § 2005 is a money-mandating statute. In *Busby School,* the court held that plaintiff's breach of trust claim based on Section 2005 "withstands defendant's broad motion to dismiss." *Id.* at 601. However, *Busby School* is distinguishable from the facts in this case because in that case the statutory directive in Section 2005 to repair and maintain Indian schools was expressly made part of contracts between the BIA and the school board. *See id.* at 599.

trust responsibilities to Indian Tribes. Although these acts impose upon the Secretary general mandates to aid Native Americans, which may be enforceable through a suit for injunctive relief, like the Snyder Act, they provide no substantive right to money damages for violation of any particular statutory directive.

Relying on *Brown v. United States*, plaintiff argues that, even if the statutes and regulations do not expressly create a fiduciary relationship, defendant's day-to-day occupation, use, control, or supervision of Fort Apache under the 1960 Act, and the other statutes and regulations cited, elevates the relationship between defendant and the Tribe to a fiduciary relationship under the *Mitchell II* "control or supervision" test. *See Brown*, 86 F.3d at 1558–62. Under *Mitchell II*, the Supreme Court explained that where the federal government takes on elaborate control or supervision over tribal resources, "the fiduciary relationship normally exists with respect to such monies or properties ... even though nothing is said expressly in the authorizing or underlying statute ... about a trust find, or a trust or fiduciary connection." *Mitchell II*, 463 U.S. at 225, 103 S.Ct. 2961. Plaintiff argues that because the government has exclusive control over Fort Apache, such a fiduciary relationship exists.

Plaintiff's argument, however, misconstrues the *Brown* court's interpretation of *Mitchell II* by focusing on the extent, rather than the nature of control necessary to establish a fiduciary relationship. The court in *Brown* held that the statutes and regulations governing commercial leasing of Indian lands need not give the government "ongoing management responsibility over the day-to-day administration of commercial leases," in order to satisfy the *Mitchell II* "control or supervision" test. *Brown*, 86 F.3d at 1561. What the *Brown* court emphasized, and the plaintiff ignores, is that the statutes and regulations at issue in *Brown* create a fiduciary relationship because they give the gov-

ernment not just control over the leasing of tribal lands, but control for the purpose of protecting the Indians' financial interests. *See id.* at 1562. The court found a fiduciary obligation because "the Secretary exercises his or her control over commercial leasing on allotted lands not only for traditional general welfare purposes, ... but also for the purpose of protecting the [Indians'] financial interests." *Id.*

Under the leasing program at issue in *Brown*, the Secretary of Interior was given authority to approve leases and lease cancellations for Indian lands, dictate leasing terms and forms, and cancel leases without the Indian owner's consent. *See id.* at 1561–62 (citing 25 U.S.C. § 415(a); 25 C.F.R. §§ 162.5(a), 162.14). Moreover, the court noted that the criteria that constrain the Secretary's approval power "are identical to those which traditionally constrain the discretion of a private trustee." *Id.* at 1562. The regulations prohibit approval of leases "at less than the present fair annual rental," and require that "the leases be limited to the minimum duration ... that will allow the highest economic return to the owner." *Id.* (quoting 25 C.F.R. § 162.5(b), 162.8) (alteration in original). The court concluded that such control over the leasing of Indian lands for the purpose of protecting the Indian financial interests, although not as pervasive as the statutory and regulatory scheme in *Mitchell II*, nevertheless, created a fiduciary relationship which would support a claim for money damages. *See id.* at 1563.[8]

The 1960 Act and the additional statutes and regulations plaintiff relies upon here are clearly distinguishable from the statutory and regulatory scheme in *Brown*. The 1960 Act and the other statutes and regulations cited by plaintiff do not require the government to manage or operate the Fort Apache site for the Tribe's benefit. Although the cited statutes and regulations may give the government complete control over the Fort

8. In its complaint, plaintiff makes the argument that the Non–Alienation of Tribal Trust Property Act, 25 U.S.C. § 177, and the regulations found at 25 C.F.R. § 162.1, which were at issue in *Brown*, give rise to a claim for money damages for breach of trust in the instant case. The court

finds these provisions inapplicable here, where the government is not charged with the responsibility of overseeing commercial leases for the benefit of the Tribe, but rather is authorized under the 1960 Act to use the Fort Apache site for its own purposes.

Apache site, they do not require that the government manage the Fort Apache site for the purpose of protecting the tribe's financial interests. Indeed, the 1960 Act allows the government to manage and operate the land and buildings for its own benefit for as long as it needs them. Consequently, the statutes and regulations identified by plaintiff do not give rise to fiduciary obligations that allow for monetary claims.

### 4. Permissive Waste

Plaintiff recognized at oral argument that to hold the government liable for money damages here the government has the right to use the trust property for its own purposes calls for an extension of *Mitchell II.* However, plaintiff asserts that where, as here, the government uses the property held in trust for the Tribe, it has a duty to preserve the property so that when it is eventually returned to the Tribe it is in a usable condition. Plaintiff likens the historic buildings on the Fort Apache site to a trust corpus, similar to the water rights at issue in *Fort Mojave Indian Tribe v. United States,* 23 Cl.Ct. 417 (1991). Plaintiff asserts that the historic buildings—the trust corpus—cannot be destroyed through defendant's neglect, and then returned to the tribe in a worthless state. According to plaintiff, the defendant has a duty to maintain the property in accordance with, at a minimum, the government's own standards for maintaining historic properties.[9]

Plaintiff argues that the defendant's failure to preserve the property is tantamount to "permissive waste," and as such amounts to a breach of trust. While the court is not unsympathetic to plaintiff's concerns; the difficulty with plaintiff's argument is that an action for permissive waste, even if proper, does not ordinarily give rise to a money claim. *See* J.A. Bryant, Jr., Annotation, *Right of Contingent Remainderman to*

*Maintain Action for Damages for Waste,* 56 A.L.R.3d 677 §§ 2–3 (1974, *Supp.*1998). The law on "permissive waste" provides that the appropriate remedy for permissive waste is generally an injunction:

> "[A] contingent remainderman of a life estate, whose contingency is not improbable, cannot, acting alone, recover damages immediately payable to himself for waste committed by the life tenant. However, he may, even when acting alone, secure a prohibitive injunction, a mandatory injunction, or a determination of damages. and their impoundment until the occurrence or defeat of the contingencies...."

*See id.* at 2, 4 (citing *American Law Institute Restatement of the Law of Property* § 188, 189, 195). Thus, even assuming a cause of action for permissive waste is triggered under the facts of this case, this court does not have jurisdiction over such a claim.

This court does not, without express statutory authority, have jurisdiction to enter injunctive relief. *See United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Beck v. Secretary of Dep't of HHS,* 924 F.2d 1029, 1036 (Fed.Cir.1991). Thus, the court does not have jurisdiction to enter an injunction with respect to the property in question. The plaintiff's reliance on injunctive relief cases to suggest that this court has jurisdiction over a permissive waste claim is misplaced. See *Pyramid Lake Paiute Tribe of Indians v. Morton,* 354 F.Supp. 252 (D.D.C.1972) (in light of fiduciary duty owed the tribe, regulation allocating water supply based on a "judgement call" by the Secretary was arbitrary and capricious); and *Blue Legs v. United States,* 867 F.2d 1094 (8th Cir. 1989), *enforced sub. nom., Blue Legs v. EPA,* 732 F.Supp. 81 (D.S.D.1990) (holding that RCRA and Snyder Act trust obligation required BIA and Indian Health Service to clean up open dumps on reservation); *See also Pit River Home Agriculture v. United*

---

**9.** Plaintiff relies on the National Historic Preservation Act of 1966, ("NHPA"), and its implementing regulations as defining the scope of the federal government's fiduciary obligations with respect to the Fort Apache site. *See* 16 U.S.C. §§ 470 to 470x–6 (1994 & Supp. III 1997); Executive Order No. 11593 (May 13, 1971); and 36 C.F.R. § 800 (1988). Plaintiff recognized at ar-

gument that these provisions are procedural in nature and do not affirmatively mandate preservation of historic buildings or other resources. *See National Trust for Historic Preservation v. Blanck,* 938 F.Supp. 908, 925 (D.D.C.1996) (holding that Congress did not intend the NHPA to create affirmative preservationist responsibilities on the government).

*States,* 30 F.3d 1088, 1098 (1994) ("5 U.S.C. § 702 waives sovereign immunity in non-monetary actions against the United States") (citing *Mitchell II,* 463 U.S. at 227 n. 32, 103 S.Ct. 2961). The court, of course, does not reach whether plaintiff may, based on these precedents, maintain an action for injunctive relief in an appropriate district court based on a breach of trust claim for permissive waste.

Finally, plaintiff's contention that this court could award the Tribe $14,000,000 in money damages so that it can fulfill the government's obligation to restore the historic buildings at Fort Apache goes well beyond the established law of this court. Plaintiff is unable to point to any authority which supports its assertion that an action for permissive waste establishes a money-mandating claim, as required under the Supreme Court's opinion in *Mitchell II.* As explained above, to the extent permissive waste may constitute a breach of trust, it is a claim for injunctive relief and does not extend to a claim for immediate money damages.

In such circumstances, plaintiff's action for breach of trust based on the above-noted statutes and regulations fails to state a claim for money damages in this court. Accordingly, it must be dismissed.

**5. Statute of Limitations**

■■■ Defendant also argues in its motion to dismiss that this court lacks jurisdiction over plaintiff's claim because it is time barred by the six-year statute of limitations. Absent a specific statute of limitation, a suit against the United States in the Court of Federal Claims is barred unless it is brought within six years of the date upon which the claim first accrued. 28 U.S.C. § 2501 (1988). "A cause of action against the government 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Fort Mojave Indian Tribe,* 23 Cl.Ct. at 428 (quoting *Hopland Band v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988)). Defendant asserts that because plaintiff "was or should have been aware" of the deteriorated state of the Fort Apache site since 1979, plaintiff's claim "ac-

crued" beyond the six-year statute of limitations. Plaintiff argues that it was not aware of its claim until 1998. Having concluded that plaintiff has failed to state a claim for relief, the court does not reach defendant's alternative basis for dismissal.

**CONCLUSION**

For the reasons stated above, the court finds that plaintiff has failed to prove a fiduciary obligation on behalf of the defendant that would give rise to a claim for money damages, and therefore fails to state a claim for which relief may be granted in this court. Accordingly, defendant's motion to dismiss for failure to state a claim is **GRANTED.** The case is hereby **DISMISSED.**