ALPINE COUNTY, CA, Amador County, CA, and El Dorado County, CA, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 02–1745C.

United States Court of Federal Claims.

March 4, 2004.

Alan I. Saltman, Saltman & Stevens, P.C., Washington, D.C., for plaintiffs. Ruth G. Tiger, Kevin R. Garden, and Michael J. Wade, of counsel.

Richard S. Ewing, with whom were Assistant Attorney General Robert D. McCallum, Jr., Director David M. Cohen, and Assistant Director Kathryn A. Bleecker, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. Leslie Lagomarcino and Jeffrey Moulton, Office of the General Counsel, Department of Agriculture, of counsel.

## OPINION

WIESE, Judge.

This action comes before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Plaintiffs, the California counties of Alpine, Amador, and El Dorado, sue here to obtain funds allegedly owed them by the United States Forest Service (the "Forest Service") pursuant to 16 U.S.C. § 500 (2000), a statutory provision that awards a share of the revenue received from the logging of national forests to the states and territories in which those forests are located. The parties have fully briefed the issue, and the court heard oral argument on November 4, 2003. For the reasons set forth below, defendant's motion to dismiss is granted.

## BACKGROUND

The Eldorado National Forest covers approximately 677,905 acres in Northern California, over 90 percent of which are located in Alpine, Amador, and El Dorado counties.

Between 1987 and 1992, the Forest Service entered into 24 contracts with various timber companies providing for the logging and sale of timber from the Eldorado National Forest. Before it had received any revenues from these timber contracts, however, the Forest Service became aware of the potentially adverse environmental impact of the proposed logging and suspended a majority of the contracts pending the outcome of an environmental impact review. Based on the results of that review, the Forest Service ultimately terminated 23 of the 24 contracts either in whole or in part.

Plaintiffs were not parties to the timber contracts with the Forest Service and do not challenge the legality of the contracts' termination. Plaintiffs instead argue that they are entitled, both under statute and by contract, to a portion of the revenues that would have been received by the Forest Service had performance of the contracts been permitted to proceed. Plaintiffs seek to recover an amount equal to 25 percent of the uncollected revenues.

## DISCUSSION

■ Plaintiffs base their claim on 16 U.S.C. § 500, which instructs the Secretary of the Treasury to pay to states and territories, for the benefit of those local jurisdictions whose lands comprise part of a national forest, a percentage of the revenue generated from the timber sold from such lands. Specifically, Section 500 provides:

> [T]wenty-five [percent] of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State or Territory in which such national forest is situated, to be expended as the State or Territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated ....

16 U.S.C. § 500. This provision, plaintiffs contend, invests them with a right to recover 25 percent of the revenues the Forest Service would have received had it not terminated the 23 timber contracts.

In light of the statutory language, however, two defects in plaintiffs' claim become immediately apparent. First, the statute, by its terms, directs disbursement only of monies "received" by the Secretary of the Treasury, but in the instant case, the Secretary received no monies at all. Second, the statute directs that a portion of such monies be paid to a "State or Territory," a governmental status that plaintiffs, as counties, cannot claim. Relying, then, on the time-honored principle that the words of a statute are to be interpreted as being "used in their ordinary and usual sense, and with the meaning commonly attributed to them," *Caminetti v. United States*, 242 U.S. 470, 485–86, 37 S.Ct. 192, 61 L.Ed. 442 (1917), we are bound to conclude that plaintiffs' case does not, on its face, satisfy the most basic elements necessary for recovery.

■ Despite these divergences between their claim and the literal terms of 16 U.S.C. § 500, however, plaintiffs maintain that the relief they seek is implicitly sanctioned by the statute. In plaintiffs' view, a right to recover monetary damages against the United States may be inferred under the Tucker Act, 28 U.S.C. § 1491 (2000) (this court's basic jurisdictional statute), where the government stands in breach of a duty owed. Plaintiffs argue that in the instant case, the Forest Service's award of the 24 timber sale contracts, whose proceeds are statutorily subject to revenue sharing, created a duty on the part of the government to administer those contracts in a manner that would ensure their expected revenue flow.[1] Because the government did not fulfill this obligation, plaintiffs contend that it breached its implied duty and, thus, must now make plaintiffs whole.

In support of the proposition that a statute may confer an implicit cause of action where a duty is owed, plaintiffs rely on the Supreme Court's decision in *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). In *White Mountain*, the Court addressed the question of whether an Indian tribe could recover damages from the United States based on the government's alleged mismanagement of trust assets in the absence of an explicit authorization of such a remedy in the underlying statute. In resolving this issue in the Tribe's favor, the Court took account of statutory language directing that Fort Apache be held by the United States in trust for the Tribe and simultaneously granting the United States discretionary authority to make direct use of portions of the trust corpus. Based on these considerations, the Court explained that "the fact that the property occupied by the United States is expressly subject to a trust supports a fair inference that an obligation to preserve the property improvements was incumbent on the United States as trustee." *Id.* at 475, 123 S.Ct. 1126. The Court went on to say: "Given this duty on the part of the [United States] to preserve [the trust] corpus, 'it naturally follows that the Government should be liable in damages for the breach of its fiduciary duties.'" *Id.* at 475–76, 123 S.Ct. 1126 (quoting *United States v. Mitchell*, 463 U.S. 206, 226, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). Accordingly, the Court concluded that the lack of express statutory authorization notwithstanding, the Tribe had a substantive right enforceable against the United States in a suit for money damages.

In plaintiffs' view, the government's control over the timber sale contracts at issue here, like the government's control over the trust corpus in *White Mountain*, must be exercised with due regard to all dependent interests. In *White Mountain*, however, the Court made clear that its conclusion was based on the existence of a statutorily defined fiduciary relationship between the government and the Tribe and on the government's authorized use of the trust's assets. The Court accordingly considered general trust law in drawing the inference that Congress intended damages to remedy a breach of obligation. *White Mountain*, 537 U.S. at 477, 123 S.Ct. 1126. The Tribe's cause of action, in other words, arose from ordinary

---

1. Specifically, plaintiffs maintain that in the solicitation leading to the award of the timber sale contracts, the Forest Service failed to take into account the environmental concerns that later required the contracts' cancellation. For lack, then, of proper contract administration, plaintiffs claim that they were wrongfully deprived of revenues they otherwise would have received.

principles of trust law once the government's fiduciary obligation to the Tribe and its control over tribal assets had been statutorily established. We encounter no comparable situation here.

The only obligation assigned to the government under 16 U.S.C. § 500 is the requirement that the Secretary of the Treasury pay over to a state or territory 25 percent of the revenues received from logging operations conducted on local lands. Such a directive creates no fiduciary relationship between plaintiffs and the government, nor does it place the government under any duty to plaintiffs at all. And, in the absence of such a duty to plaintiffs, no claim to damages can arise.

Plaintiffs' reference to *Federal Land Bank of Houston v. United States*, 144 Ct.Cl. 173, 168 F.Supp. 788 (1958), is similarly unavailing. In *Federal Land Bank*, the court addressed the question of whether the government could be held liable to the owner of a royalty interest in oil and gas reserves on government-owned lands where the government had delayed opening the lands to drilling. In holding that the plaintiffs had an implied cause of action for damages, the court stated: "[A]s between the mineral fee owner and the royalty owner there is an implied covenant in the deed that the mineral fee owner will use the utmost fair dealing and diligence in obtaining lease agreements in order to protect the royalty owner's interest." *Id.* at 791. As in *White Mountain*, then, the court predicated its finding on the government's failure to perform a specific duty that was cognizable in law. The holding in *Federal Land Bank*, therefore, similarly does nothing to sustain plaintiffs' case.

Even if 16 U.S.C. § 500 itself does not invest them with a cause of action, however, plaintiffs nonetheless maintain that they may sue here to recover damages for the Forest Service's alleged mismanagement of the timber sale contracts based on their alleged status as third-party beneficiaries of the terminated contracts. That status, plaintiffs contend, devolves upon them as a matter of law by virtue of their being identified in Section 500 as the intended beneficiaries of timber contract revenues. This too, however, is an argument we cannot accept.

As the Federal Circuit has pointed out, third-party beneficiary status is an "exceptional privilege," *Glass v. United States*, 258 F.3d 1349, 1354, *amended on reh'g.* 273 F.3d 1072 (Fed.Cir.2001), one that grants a non-signatory to a contract the right to sue for the contract's enforcement. An individual claiming such a privilege must demonstrate that the contracting parties intended to enter into the contract for his or her "direct benefit.'" *Id.* (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912)). Such an intent may be expressed in the words of the contract or otherwise be evident from the considerations that gave rise to the creation of the contract in the first instance. *Glass*, 258 F.3d at 1354. Thus, for example, where a contract implements a statutory enactment, evidence of contractual intent may be drawn from the governing statute and its purpose. *Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed.Cir.2001).

An example of the latter, and a case on which plaintiffs now rely, is *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596 (1985). In *Busby*, the court ruled that tribal members and their minor children could potentially qualify as third-party beneficiaries of a contract between a tribally elected school board and the Bureau of Indian Affairs to operate a school system for the community of Busby on the Northern Cheyenne Tribal Reservation. In explaining this result, the court noted: "[P]laintiffs ... may ... well be able to show they were intended third-party beneficiaries of the contracts between the School Board and the [Bureau of Indian Affairs] given the pertinent statutes and regulations and the underlying policy behind the contracts and applicable statutes and regulations of providing Indian children on Indian reservations with an education. The contracts in issue incorporated therein the substance and intendment of these statutes ...." *Id.* at 602.

Plaintiffs rely on the language in *Busby* for the proposition that third-party beneficiary status arises whenever a contract carries into effect benefits accorded to a party by

statute. Because Section 500 directs that timber revenues be paid "for the benefit of the public schools and public roads of the county or counties in which such national forest is situated," plaintiffs maintain that they are necessarily the beneficiaries of any contracts entered into pursuant to that section and therefore are entitled to sue for the contracts' enforcement.

The difficulty with plaintiffs' argument, however, is that the timber sale contracts at issue here contain nothing to suggest that they were drafted with Section 500 in mind. The contracts do not mention that section nor rely on it as their authority to carry out the timber sales in question. Thus, unlike the contracts in *Busby* which, as the court there noted "incorporated ... the substance and intendment of [the applicable] statutes," *id.*, here we have nothing that would allow us to say that the timber sale contracts were executed in fulfillment of the purpose set out in Section 500. In short, proof of the requisite intent to confer upon plaintiffs the benefit of the performance contemplated under the timber sale contracts is altogether missing. And without proof of such intent, plaintiffs cannot claim a contractual relationship with the United States. The only relationship plaintiffs can claim with regard to the timber sale contracts is that by virtue of Section 500, they are incidental beneficiaries of the performances those contracts contemplated. That relationship cannot support a right to sue in this court for breach of contract. *See Glass*, 258 F.3d at 1354 (distinguishing between a third-party beneficiary and "an indirect beneficiary, who is, at most, an incidental beneficiary with no rights to enforce the contract").

## CONCLUSION

For the reasons set forth above, the court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Accordingly, the Clerk shall enter judgment dismissing plaintiff's complaint.